Asamblea Municipal de Maunabo, querellante y apelada, *v.* Casimiro Steidel, Alcalde, querellado y apelante.

Núm. 9.—*Sometido:* Mayo 13, 1939. *Resuelto:* Mayo 19, 1939.

*Burset & Pérez Pimentel,* abogados del apelante; *R. Calderón Rodríguez* y *Ramón Meléndez,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

En 28 de julio de 1938, Agustín Torres Bellber, miembro de la Asamblea Municipal de Maunabo, formuló cargos ante

dicha Asamblea contra Casimiro Steidel, Alcalde de Maunabo. Dichos cargos leen así:

"1. Que Casimiro Steidel, siendo como lo es el Alcalde Municipal de Maunabo, Puerto Rico, y con su consentimiento permitió y consintió que el empleado Miguel Sánchez y quien trabajaba en el acueducto de Maunabo, P. R., como celador del mismo, y cobrando un sueldo de este municipio, abandonara sus labores oficiales para trabajar y cobrar un salario en las plantaciones de la PRRA, cobrando en ambas partes al mismo tiempo.

"2. Que Casimiro Steidel, siendo como es el Alcalde Municipal de Maunabo, P. R., consintió que Gumersindo Figueroa, Conserje Municipal, trabajara en las colonias de Maunabo, abandonando sus quehaceres en la Alcaldía Municipal, cobrando en ambas partes.

"3. Que Casimiro Steidel, siendo como es el Alcalde Municipal de Maunabo, y sin el consentimiento de la Hon. Asamblea Municipal, permitió y consintió que Antonio Saldaña sembrara tabaco en una parcela de terreno propiedad del municipio, siendo ésta una atribución de la Hon. Asamblea Municipal.

"4. Que Casimiro Steidel, siendo como lo es el Alcalde Municipal de Maunabo, Puerto Rico, permitió, consintió y ordenó al Alcaide de Cárcel Municipal de Maunabo, entregara animales encarcelados a sus dueños sin el previo pago que determina la Ley."

Terminada la lectura de los cargos, la Asamblea decidió suspender al querellado de empleo y sueldo, concediéndole hasta el 17 de agosto de 1938 para presentar su contestación. Según aparece de las actas del municipio, que constan en el récord, la Asamblea Municipal se reunió en los días 17 de agosto, 1, 6 y 16 de septiembre y 3 de diciembre de 1938, en asamblea extraordinaria para oír los cargos contra el Alcalde, sin que en ninguna de dichas sesiones se tomara acuerdo alguno que no fuera el de suspender la sesión. Reunida de nuevo la Asamblea el 21 de diciembre de 1938, el mismo asambleísta Agustín Torres Bellber formuló cuatro cargos adicionales contra el querellado. Dichos cargos leen así:

"1. Que don Casimiro Steidel en su calidad de Alcalde Municipal el día 21 de agosto del año 1937 en una discusión que sostuvo con la enfermera socialista María P. Solís, la amenazó con destituirla y le dijo entre otras cosas: Los pelos que me faltan en la cabeza los

tiene U. en la pulpa vaginal, por no decir otra cosa, cosa ésta contraria a la moral pública que debe tener un funcionario, especialmente un Alcalde.

"2. Que Casimiro Steidel en su carácter de Alcalde Municipal ordenó al obrero Gumersindo Figueroa que le llevara a su casa unos zocos de árboles tumbados en la plaza pública, incautándose de ellos para su propio uso siendo ésta una propiedad municipal la que podía realizarse a dinero. Esto lo vimos el asambleísta Egea y el asambleísta suscribiente.

"3. Que el señor Casimiro Steidel en su carácter de Alcalde y de Presidente del Comité de Festejos en las fiestas de San Pedro no rindió a esta Hon. Asamblea un estado de los fondos recolectados en la plaza pública cedidos para ayudar en las fiestas por esta asamblea, y el remanente para fondos para medicinas o cualquier atención pública municipal. Ni tampoco ha sometido ningún informe sobre las personas que alquilaron puestos y lo que cada persona pagó por el puesto respectivamente por el término de la fiesta o lo pagado diariamente por cada persona.

"4. Que Casimiro Steidel en su carácter de Alcalde Municipal, retenía las medicinas para pobres en su oficina dando lugar a que muchos enfermos se fueran para sus hogares sin las medicinas recetadas por el médico, obstaculizando de este modo servicios municipales de gran importancia."

La Asamblea concedió al querellado un término de 10 días para contestarlos y se declaró en receso hasta el primer martes después del día de Reyes, fecha señalada para ver los cargos. El 10 de enero de 1939, casi seis meses después de haber sido suspendido de empleo y sueldo el querellado, la Asamblea volvió a reunirse para la vista de los cargos; después de explicar la presidencia "que si ha habido tardanza en este procedimiento se debe a que las direcciones centrales de los partidos coligados han estado aplazando el arreglo de este asunto y que por lo tanto no es culpa de la Asamblea," se suspendió la sesión hasta el 13 de enero de 1939 para que la Asamblea tuviese oportunidad de contratar los servicios de un abogado.

En la sesión del 13 de enero se dió lectura a la contestación del querellado a los cargos originales, que dice:

"*Primero*.—Que niega en su totalidad el cargo *primero* por ser incierto y en contrario alega como defensa: Que el señor Miguel Sánchez no desempeñó el cargo de Celador del Acueducto durante el mes de julio de 1937, siendo este puesto desempeñado por su hijo Mercedes Sánchez, como se prueba en una declaración jurada de dicho Miguel Sánchez, que se acompaña y se hace formar parte de esta contestación, y en la cual se hace constar además que si trabajó alguna vez fuera del municipio, ello fué ignorado por el querellado. Así también se prueba con una certificación del Secretario-Auditor de este municipio, que a la vez se acompaña, que el aludido Mercedes Sánchez cobró veinte dólares por servicios prestados al municipio como Celador del Acueducto. Se hace constar además, en defensa del querellado, que el Sr. Miguel Sánchez cobra de la partida en Presupuesto titulada 3501, Jornales: Limpieza Acueducto, y que por lo tanto cobra por jornales sin ser empleado o funcionario del Municipio.

"*Segundo*.—Que asimismo niega el querellado el cargo *segundo*, en su totalidad, y en contrario alega, que el señor Gumersindo Figueroa nunca ha trabajado en las Colonias de Maunabo, desatendiendo a sus quehaceres en el Municipio, con conocimiento del querellado, y que si alguna vez él faltó a su trabajo en el Municipio, fué sustituído por su hijo, Sr. Angel Figueroa, habiendo alegado dicho señor Figueroa encontrarse enfermo, según se comprueba con una declaración jurada que se acompaña. Se hace constar además, en defensa del querellado, que el empleo que ocupaba el Sr. Gumersindo Figueroa como Conserje Municipal, cobraba de la partida 2292 Limpieza Edificios Municipales, por servicios, no figurando en las nóminas como empleado o funcionario del Municipio.

"*Tercero*.—Que al negar el cargo *tercero*, el querellado alega como defensa, que el señor Antonio Saldaña, quien es un obrero muy pobre sin empleo, con una familia numerosa a cargo, se presentó al Alcalde querellado, solicitándole permiso para limpiar el patio del Hospital Municipal y sembrar en el mismo frutos menores y tabaco, comprometiéndose a mantener siempre limpio dicho patio y los alrededores del Hospital, y a dar una tercera parte del producto al Municipio; que el Alcalde querellado concedió al Sr. Saldaña el permiso solicitado bajo las condiciones expuestas, y que el producto del tabaco sembrado no ha sido liquidado aún pero tan pronto lo sea le será entregada al Municipio la parte que le corresponde. Entiende el Alcalde querellado, que el municipio no ha sido, en forma alguna, perjudicado, y que por el contrario se benefició grandemente, mientras el Sr. Saldaña mantuvo limpios los alrededores del Hospital Mu-

nicipal, sin costo alguno. Se hace constar además en defensa del querellado, una declaración jurada del Sr. Saldaña testificando en la misma los hechos arriba mencionados, la que se acompaña a esta contestación.

"*Cuarto*.—El Alcalde querellado niega en todas sus partes el *cuarto* cargo, por carecer a su juicio de veracidad y en su defensa expone: que ni permitió, ni consintió, ni ordenó al Alcaide de Cárcel Municipal de Maunabo, P. R., entregara animales encarcelados a sus dueños, sin el previo pago que determina la Ley. Que el Alcalde querellado, además de los muchos éxitos alcanzados en su administración, alega en su defensa en este extremo que ha sido él el único alcalde. en este pueblo que ha tenido el mayor éxito alcanzado hasta ahora en favor del municipio, según se comprueba con una certificación del propio Secretario-Auditor, en la cual se hace constar que durante el semestre de julio a diciembre del año 1936, en la pasada Administración Municipal, solamente ingresó por concepto de 'Corral de Animales' la cantidad de $12.50 y que durante el próximo semestre de su Administración de enero a julio de 1937, ingresó la cantidad de $164.23; y que más adelante durante el ejercicio económico 1937–38, el concepto montó a $317.75, o sea $153.32 más que el año anterior. Alega también en su defensa el Alcalde querellado, que si los ingresos no han sido mayores, es debido a que hay asambleístas, que sí han ordenado que se le entreguen a ellos, animales que han sido encarcelados sin pagar sus derechos correspondientes y también y muy en particular a que si hubiera aceptado y dado curso a *recomendaciones escritas y firmadas por el propio querellante, dirigidas al Alcalde* querellado, entonces sí, que no sería de dudarse que estos ingresos hubieran sido notablemente mermados en grave perjuicio del Municipio. El Alcalde querellado tiene prueba fehaciente para comprobar lo que se refiere al propio querellante y que aparece subrayado en el presente párrafo de esta contestación.''

La contestación a los cargos adicionales lee como sigue:

"*Primero*.—Que niega en su totalidad el cargo primero por ser incierto y en contrario como defensa alega, que María P. Solís no era en 21 de agosto de 1937 enfermera municipal, ni tenía ningún cargo en el Municipio de Maunabo; ni fué amenazada por el Alcalde suscribiente con destituirla ni se le dijo por éste frase alguna que pudiera ser contraria a la moral pública.

"*Segundo*.—Que niega del cargo segundo haberse incautado para su propio uso zocos de árboles de la plaza pública, y en contrario

alega que el obrero Gumersindo Figueroa obtuvo como pago de la limpieza de la plaza pública unos zocos de árboles por toda remuneración.

"*Tercero.*—Niega en absoluto el cargo tercero y en contrario alega haber rendido cuenta al Municipio de Maunabo del remanente de fondos correspondiente a las fiestas patronales de dicho municipio, haciendo entrega de dichos fondos al Tesorero Municipal de Maunabo.

"*Cuarto.*—Niega el hecho cuarto, de los cargos, y en contrario alega que jamás ha retenido medicinas para los pobres ni obstaculizado los servicios municipales, pero que ha mantenido bajo su custodia las medicinas, para evitar que las mismas sean dispuestas para otros fines distintos y por otras personas que no sean las incumbentes en este negocio."

Después de leídos los cargos y las contestaciones la Asamblea acordó, con la oposición del querellado, un receso de 20 días, hasta el 2 de febrero de 1939, para que los abogados de la Asamblea tuviesen una oportunidad de estudiar los cargos y preparar la prueba. La sesión del 2 de febrero fué consumida en la discusión de varias cuestiones de derecho sometidas por la representación del querellado, todas las cuales fueron declaradas sin lugar. El 3 de febrero se dió comienzo a la práctica de la prueba de cargo, continuando ésta durante los días 6, 9 y 14 de febrero de 1939. El 16 del mismo mes la Asamblea Municipal de Maunabo dictó su resolución definitiva, con los siguientes pronunciamientos:

"(1) Se exonera al Alcalde impugnado Casimiro Steidel de los cargos números 1 y 2.

"(2) Y por los cargos números 3 y 4 y 1, 2, 3 y 4 de los cargos adicionales, se destituye al mencionado señor Casimiro Steidel de su cargo de Alcalde de Maunabo, P. R., quedando este funcionario por ministerio de Ley suspenso de empleo y sueldo, mientras esta resolución sea firme."

En 27 de febrero de 1939 el querellado radicó ante esta Corte Suprema su escrito de apelación, acompañado de un pliego conteniendo los fundamentos de hecho y de derecho en apoyo del recurso.

Alega el apelante que la Asamblea Municipal actuó movida por pasión, prejuicio y parcialidad en contra del Alcalde; que actuó de mala fe al demorar injustificadamente el procedimiento desde el 23 de julio de 1938 hasta el 16 de febrero de 1939, privando así al apelante de un juicio rápido, justo e imparcial; y que la prueba aducida en apoyo de los cargos es incompetente e insuficiente para sostenerlos.

Pasaremos por alto las cuestiones técnicas de derecho que levanta el apelante, para entrar de lleno en el examen crítico de la evidencia en que se apoya la resolución recurrida.

■ Para sostener el cargo original núm. 3, en el que se imputó al Alcalde haber permitido que se sembrara tabaco en el patio del Hospital Municipal, se presentó el testimonio de Antonio Saldaña, quien declaró:

Que él pidió permiso al Alcalde para sembrar el tabaco; que las anteriores administraciones siempre habían dado permiso a todo el mundo; que el Alcalde se lo concedió con el compromiso de tener siempre limpio el patio del hospital y de darle algo al Municipio si acaso tenía alguna ganancia; que el negocio le resultó malo, pues gastó $29.00 y no sacó ni $15; que mientras el tabaco estuvo allí el patio estuvo siempre limpio, mientras que ahora está hecho una maleza, como cuando él lo cogió; que no dió participación en ese tabaco a nadie; que el tabaco que cosechó lo cambió por una cabra.

Al terminar de declarar el testigo Saldaña, el asambleísta Agustín Torres Bellber, quien formuló los cargos contra el querellado, se ofreció para declarar, impugnando la declaración de Saldaña, que éste le había informado "que ese tabaco lo había sembrado allí por orden del Alcalde," y añadió que la planta de tabaco "tiene nicotina y produce peste que perjudica a los pacientes que están allí recluídos en el hospital."

En ausencia de prueba demostrativa de que el querellado se lucró en alguna forma o de que el municipio sufrió algún perjuicio en sus intereses como consecuencia de la siembra de tabaco, el cargo resulta nimio y no constituye a nuestro

juicio causa bastante para justificar la destitución del querellado. La misma prueba de cargo demuestra que el Municipio se benefició con la limpieza del patio del hospital mientras Saldaña tuvo allí su plantación de tabaco.

■ En apoyo del cargo original núm. 4—en el que se imputó al querellado haber permitido y ordenado la entrega a sus dueños de animales encarcelados, sin cobrar las cantidades fijadas por la ley—se ofreció el testimonio de Juan Texidor Puma, antiguo Alcaide de la Cárcel Municipal, quien se suponía ser la persona a quien el Alcalde había ordenado entregar los animales. A preguntas del abogado de la Asamblea, declaró: Que el Alcalde nunca le ordenó que entregara el ganado encarcelado sin el pago de los derechos. Preguntado por el asambleísta Torres Bellber, el testigo contestó que no recordaba haber dado a dicho asambleísta un papel del Alcalde en que ordenaba al testigo que entregara una cerda y una vaca. En contestación a preguntas del asambleísta Casta el testigo se reafirmó en su declaración de que el Alcalde nunca le había dado orden de entregar ganado a ninguna persona. Y al preguntársele si alguna otra persona le había dado tales órdenes, dijo: "Yo me recuerdo ahora, que este caballero (Sr. Torres Bellber) me dijo a mí: 'Nosotros tenemos que hacer política aquí y aquí a los socialistas buenos dales los animales'"; pero que nunca tuvo que dar ningún animal, pues su cargo duró pocos días.

Para impugnar la veracidad de Juan Texidor Puma, volvió a ocupar la silla testifical el asambleísta Torres Bellber, quien declaró que él como Presidente del Partido Socialista recibió numerosas quejas contra el Alcaide de Cárcel Texidor por estar siempre abandonando sus servicios; que el Partido recomendó a Carlos Torres para sustituirlo; que por eso Texidor se niega a decir la verdad; que la verdad es que Texidor le dió a él unos papeles relacionados con órdenes del Alcalde para la entrega de animales; que esos papeles se han desaparecido; que no es cierto que él dijera a Texidor que había que entregar ganado para hacer política.

Esta prueba es claramente insuficiente para sostener este cargo. La declaración de referencia de Torres Bellber en cuanto a las manifestaciones que le hiciera Texidor, contrarias a las que hizo en el momento de la vista, favorables al querellado, pueden ser utilizadas para impugnar la declaración del testigo Texidor, pero son inadmisibles en contra del querellado. El cargo debió ser desestimado por falta de prueba.

██ El primero de los cargos adicionales se refiere a las palabras que se dice fueron dirigidas por el querellado a la enfermera socialista María P. Solís. Para sostenerlo se ofreció como único testimonio el de la señora Solís, quien declaró que allá para el 21 de agosto de 1937 ella trabajaba como enfermera en Maunabo; que renunció como enfermera municipal en abril de 1937 porque el Alcalde no le ofrecía garantía, porque en una ocasión estando ella trabajando allí oyó una conversación en el hospital en que el Alcalde decía que el Sr. Agustín Torres Bellber era el culpable de que no hubiera doctor; que ella le dijo al Alcalde que lo que decía era falso, y que ella sabía que él le había declarado la guerra y que él tenía pelos en el corazón, y que él le respondió "que si él los tenía en el corazón, que yo los tenía abajo y entonces señaló con los dedos y los ojos a cierta parte," refiriéndose a sus partes sexuales. A repreguntas de la defensa respondió que ella es casada y enfermera y que por eso el término "vulva vaginal" no le causa sorpresa; que el 21 de agosto, 1937, día en que ocurrió esa conversación, ella no era empleada del Municipio de Maunabo, pues había renunciado en marzo o abril de ese mismo año. Examinada de nuevo por el abogado de la Asamblea, declara la testigo que el día en que el Alcalde le dirigió esas palabras ella estaba en el hospital atendiendo a los enfermos; que el Alcalde le dijo esas palabras en el pasillo, delante de un grupo como de veinticinco personas; que ella pidió auxilio al cuartel de la policía y un policía investigó el caso y el Alcalde no le negó al policía lo que le había dicho y lo sostuvo delante del

público; que lo único que ella le dijo al Alcalde fué que los pelos que le faltaban en la calva los tenía en el corazón; que mientras ella salió del hospital a buscar al policía el Alcalde preparó al público para que declarasen a favor de él.

Si se tiene en cuenta que el alegado incidente entre el querellado y la señora Solís ocurrió dieciséis meses antes de que se formulara el cargo ante la Asamblea, sin que la señora Solís se tomara interés suficiente en el asunto para presentar una denuncia en contra del alcalde, a pesar de haber ocurrido el hecho en presencia de veinticinco personas particulares y un policía; que el incidente fué provocado por la propia señora Solís al imputarle al alcalde haber dicho una falsedad en contra del asambleísta acusador Agustín Torres Bellber y que tenía en el corazón los pelos que le faltaban en la calva, dando con ello lugar a que el alcalde ofendido le contestare en términos similares, aun cuando con referencia a una parte distinta de su anatomía; que parece inaudito el hecho de que habiendo más de veinticinco personas y un agente del orden público que se dice presenciaron y oyeron el insulto de una mujer por un hombre, ni uno solo de ellos saliera a la defensa de la ofendida o compareciera ante la Asamblea a corroborar el testimonio de la señora Solís, negado enfáticamente por el querellado; y por último, que el hecho, aun cuando fuera cierto, no tiene relación alguna con el servicio público y en nada ha podido afectar los intereses del municipio, debemos llegar a la conclusión de que la Asamblea erró al no desestimar el cargo por insuficiencia de la prueba aducida para sostenerlo. Del hecho de no haberse presentado el testimonio de una sola de las veinticinco personas que según la señora Solís presenciaron el incidente o del policía que intervino en el mismo surge la presunción legal de que esa evidencia voluntariamente suprimida por la parte querellante le hubiese resultado adversa si la hubiese ofrecido. Artículo 102, inciso 5, Ley de Evidencia.

▇ El cargo adicional número 2, en el que se imputa al Alcalde querellado haberse apropiado para su uso particular

unos zocos de árboles tumbados en la plaza pública, tampoco aparece sostenido por evidencia alguna que demuestre que el Alcalde se haya lucrado o que el Municipio haya sufrido menoscabo en sus intereses. Examinemos la prueba.

Declaró Gumersindo Figueroa que fué Conserje de la Alcaldía durante catorce meses a partir de enero 11, 1937; que el Alcalde nunca le ordenó que llevara unos zocos de árboles y nunca cargó troncos para el Alcalde; que habiendo en la plaza unos árboles que estorbaban y que debían ser eliminados porque se estaban secando, el Alcalde empezó a buscar un peón para que hiciera el trabajo, y entonces el testigo se ofreció a hacerlo él con la condición que le dieran la leña; que el Alcalde se negó por ser el testigo empleado del Municipio; que entonces él le propuso al Alcalde que le diera la leña y que él pondría un peón para derribar los árboles y sacarlos de la plaza; que el Alcalde aceptó esa proposición; que sacó dos carros de leña y los vendió a una panadería; que el Alcalde le dijo que cogiera la leña en pago de su trabajo; que en la panadería le pagaron por la leña $2.50, de los cuales dió la mitad al peón, reservándose para sí el $1.25 restante en compensación por las horas extras en que trabajó ayudando al peón; que no dió dinero al Alcalde ni a ninguna otra persona; que algunos de los zocos que sobraron fueron usados en la carnicería y en el corral de animales del municipio. Preguntado por el asambleísta Egea si era o no cierto que el testigo le había ofrecido a él la leña, diciéndole que el Alcalde se la había mandado a vender, el testigo respondió: "No, señor, eso no es verdad."

Para suplir las deficiencias de su propio testigo e impugnar su veracidad, volvió a declarar el asambleísta acusador Agustín Torres Bellber, y dijo: "Lo que yo sé es que Gumersindo Figueroa pasaba con un zoco para la casa del Alcalde y nos dijo al asambleísta Egea y a mí, que ese zoco era para una cocina de una casa del Alcalde." Pidió el abogado defensor la eliminación de dicha declaración por ser de referencia, tomando excepción al ser denegada su petición. En

igual sentido se permitió declarar al asambleísta Egea, con la diferencia de que no era uno sino cinco los zocos que Figueroa llevaba para la cocina del Alcalde.

Fué error de la Asamblea declarar probado este cargo a base de declaraciones de referencia ofrecidas con el propósito de impugnar la veracidad de los testigos de la parte querellante. El cargo debió ser desestimado.

■ Se acusa al querellado y apelante en el cargo adicional número 3 de no haber rendido a la Asamblea un estado de los fondos recolectados durante las fiestas de San Pedro. En la transcripción de evidencia consta (págs. 27 y 77) que los abogados de la Asamblea solicitaron el archivo de este cargo por considerarlo frívolo y vicioso, porque el Alcalde no está legalmente obligado a rendir tal informe a la Asamblea y porque no se alega que el querellado se haya apropiado en todo o en parte de los dineros recaudados, ni que el municipio se haya perjudicado en sus intereses. La oposición del asambleísta Torres Bellber fué suficiente para que la moción de archivo fuese derrotada por votación de 5 contra 2. En apoyo del cargo declaró el asambleísta Torres Bellber que la Asamblea había pasado un acuerdo para que lo recaudado por el Comité de Festejos fuera consignado en la Tesorería Municipal y que se sometiera un memorándum de lo recaudado a la Asamblea, lo que no hizo el Alcalde. El Secretario-Auditor del Municipio de Maunabo declaró: Que según consta del Acta núm. 50 que tiene ante sí, en la sesión del 22 de junio de 1938, a la que asistió el asambleísta Torres Bellber, lo único que se acordó lee así:

"Luego la Asamblea acuerda ceder al Comité de Festejos de las fiestas patronales, lo que ingrese por concepto de espectáculos públicos, durante los días de fiesta, por alquiler de sitios en la plaza, instalación de ruletas y demás juegos. Este acuerdo lo tomó la Asamblea con el voto en contra del Sr. Agustín Torres."

Continuó declarando el Secretario y Auditor que le consta de su propio conocimiento que el Alcalde ingresó $30 como

donativo al hospital municipal, procedente dicha suma del sobrante de lo recaudado en las fiestas patronales. Y volvió a la carga el asambleísta Torres Bellber para declarar que si él firmó el acuerdo leído por el Secretario, lo hizo por inadvertencia y sin darse cuenta de que no se había hecho constar en el acta que el remanente debía ser para medicinas para los enfermos del hospital; e insistió en que la Asamblea había acordado "que el Comité de festejos devolvería el remanente a la Asamblea."

El cargo debió ser desestimado por las razones expuestas en la moción de archivo de los abogados de la querellante.

■ El cuarto y último cargo adicional debió ser desestimado de plano por vago e impreciso. Vaga, imprecisa e insuficiente fué la evidencia ofrecida para sostenerlo. El asambleísta Egea declaró que un día, sin precisarlo, él fué con cuatro veteranos enfermos al hospital y el médico le dijo que se aguardara media hora en lo que mandaba buscar medicinas para los enfermos; que se vió obligado a esperar seis horas porque el Alcalde, quien tenía las medicinas guardadas en su oficina, no aparecía; y que los veteranos se fueron sin las medicinas. Repreguntado no pudo precisar la fecha, ni los nombres de los veteranos ni la clase de medicinas que éstos necesitaban.

Para reforzar la declaración del testigo Egea, se ofreció nuevamente el Sr. Torres Bellber, quien declaró que a él le constaba que en muchas ocasiones se fueron los enfermos sin medicinas, porque el Alcalde no las despachaba. No precisó fechas ni nombres de los enfermos. Y por último declaró que a él le constaba que el Alcalde le echaba agua a las medicinas.

■ Hemos hecho un estudio detenido y cuidadoso de la evidencia elevada ante esta corte, incluyendo todas las actas de sesiones de la Asamblea en relación con este asunto. Al terminarlo, hemos experimentado la natural sensación de amargura y desencanto que produce en los ánimos serenos

todo acto humano realizado bajo la influencia de la pasión y del instinto de venganza.

La lectura del récord revela claramente que todo este proceso ha girado alrededor del asambleísta Agustín Torres Bellber, acusador, testigo estrella, impugnador de todo testigo que no declaraba conforme a sus deseos, y por último, como asambleísta, interviniendo con su voto en la resolución del caso en contra del querellado.

Es lamentable que la pasión, el prejuicio y la parcialidad, claramente manifiestos en todo este proceso, hayan llevado a un hombre elegido para servir al pueblo a utilizar su cargo para tratar de dañar con acusaciones infundadas el buen nombre de otro ciudadano que ha merecido la confianza popular. Pero más lamentable aún es el triste espectáculo que ofrece toda una Asamblea, que por ductilidad o incapacidad se presta a servir de instrumento a las pasiones de uno de sus miembros.

Nos hemos expresado en lenguaje franco y fuerte, no solamente por creer que el récord ante nos lo justifica, si que también inspirados por el deseo de ayudar en cuanto nos sea posible a orientar y educar cívicamente a nuestro pueblo. Es el de Alcalde de un Municipio cargo de honor y de responsabilidad; el más alto honor que los ciudadanos de una comunidad municipal pueden conferir y la más grave responsabilidad que pueden imponer a uno de sus conciudadanos. Es deber del recipiente de tal honor hacerse digno del mismo, sirviendo a sus comitentes con lealtad y eficiencia. Debe el Alcalde sobre todo ser estricto y escrupuloso en el manejo de fondos públicos y en la administración y conservación de la propiedad municipal, evitando aun aquellas pequeñas irregularidades que puedan dar lugar a críticas o crear dudas en cuanto a su integridad. Y es deber de sus comitentes, aun de aquellos que fueren sus enemigos personales, respetarle, alentarle y ayudarle en el desempeño de sus deberes públicos. Así nada más es posible el funcionamiento normal de un régimen democrático.

Opinamos que de acuerdo con el récord ante nos no hubo "causa justificada" para la destitución del Alcalde apelante y que la misma fué dictada en contravención de las disposiciones del artículo 29 de la "Ley estableciendo un sistema de gobierno local para los Municipios de Puerto Rico," aprobada en 28 de abril de 1928 (Ley núm. 53 de 1928, pág. 335), según quedó enmendado por la Ley núm. 98 de mayo 15 de 1931. (Leyes de 1931, págs. 595, 609.)

*Por las razones expuestas debe revocarse la resolución recurrida, ordenarse la reposición del apelante Casimiro Steidel en su cargo de Alcalde Municipal de Maunabo y condenarse a la Asamblea apelada al pago de las costas, más la suma de $150 como honorarios del abogado del apelante.*